

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH A. DANIELS,

    Plaintiff,

v.                                 Civil Action No. 3:11CV461

PAUL E. CALDWELL,

    Defendant.

**MEMORANDUM OPINION**

Joseph A. Daniels, a Virginia prisoner proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983[1] complaint. The matter is before the Court on Dr. Paul E. Caldwell's Motion for Summary Judgment. (ECF No. 48.) Dr. Caldwell provided Daniels with appropriate Roseboro[2] notice. (Id. at 1 n.1.) Daniels has not responded. For the reasons set forth below, Dr. Caldwell's Motion for Summary Judgment will be granted.

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).



## II. DANIELS'S COMPLAINT

In September of 2009, Daniels was detained in the Henrico County Jail ("the Jail"). (Compl. 3, ECF No. 1.)[3] Daniels alleges:

> On the date of September 1, 2009, at Saint Mary's Hospital in Richmond Virginia, an operation was performed on me by Dr. Paul E. Caldwell in order to repair my left arm bicep muscle and rotary [sic] cuff. When healed and exercising to restore mobility of my arm, I noticed that my left shoulder anterior deltoid muscle was removed unnecessarily. When bringing this claim to Dr. Caldwell, his response was that my circumstances was [sic] better than before.
> For Doctor Caldwell to make such a statement showed deliberate indifference and the intentional denial of adequate medical care. The above actions are a violation to my Eighth Amendment right[4] to be free of cruel and unusual punishment.
> To date, I am without total use of mobility with my left arm and continue to suffer pain as a result of not being given the therapy need[ed].

(Id. at 4 (capitalization and punctuation corrected).) Daniels demands monetary damages and injunctive relief.[5] (Id. at 5.)

---

[3] Because the Complaint is not paginated, the Court employs the page numbers assigned to the Complaint by the Court's CM/ECF docketing system.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] By Memorandum Opinion and Order entered on January 7, 2013, the Court dismissed as moot Daniels's request for injunctive relief. Daniels v. Caldwell, No. 3:11CV461, 2013 WL 85165, at *5 (E.D. Va. Jan. 7, 2013).

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby,

3

Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Dr. Caldwell submitted the following pertinent evidence:[6] his own affidavit (ECF No. 51 ("Caldwell Aff.")); an index to and copy of Caldwell's medical records (Caldwell Aff. Exs. 1-28); an

---

[6] Dr. Caldwell also submitted evidence to support his argument that Daniels had failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the Court concludes that Daniels's claim lacks merit, the Court will not address the exhaustion argument.

4

affidavit from Anthony J. Shaia, a board certified orthopaedic surgeon retained by Caldwell to offer expert testimony on behalf of Dr. Caldwell (ECF No. 50 ("Shaia Aff.")); and, an affidavit from Matthew J. Lahiff (ECF No. 49 ("Lahiff Aff.")). In light of the foregoing submissions, the following facts are established for purposes of the Motion for Summary Judgment.

### III. SUMMARY OF PERTINENT FACTS

On September 1, 2009, Dr. Caldwell performed a left shoulder arthroscopy with arthroscopic rotator cuff repair, acromioplasty[7] and open proximal biceps tenodesis[8] on Daniels to repair his left shoulder rotator cuff tear, impingement, and biceps rupture.[9] (Caldwell Aff. ¶ 10.) Contrary to the allegations in the Complaint, Daniels's anterior deltoid muscle was not removed, incised, or altered during the September 1, 2009 surgery. (Shaia Aff. ¶ 8; Caldwell Aff. ¶¶ 10, 33.)

---

[7] Acromioplasty involves the "removal of a small piece of the surface of the bone that is in contact with a tendon causing, by friction, damage to the tendon." (Caldwell Aff. ¶ 10.)

[8] Tenodesis is "the surgical anchoring of a tendon to a bone." (Caldwell Aff. ¶ 10.)

[9] At the time of the surgery, Daniels was a convicted felon, detained in the Henrico County Jail. (Compl. 3); Petition for a Writ of Habeas Corpus ¶¶ 2-3, Daniels v. Hinkle, 3:11CV675 (E.D. Va. filed Oct. 11, 2011), ECF No. 1.

On September 18, 2009, Dr. Caldwell saw Daniels in follow-up to the September 1, 2009 surgery. (Caldwell Aff. ¶ 11). At that visit, Dr. Caldwell provided Daniels with a copy of the post-operative rehab protocol for rotator cuff repair and prescribed a formal course of physical therapy. (Id.)

On October 9, 2009, Dr. Caldwell examined Daniels for a follow-up examination of his left shoulder. (Id. ¶ 14.) Daniels did not voice any complaints regarding the surgery or the appearance of his shoulder. (Id.)

Between September 24, 2009 and January 14, 2010, Daniels attended at least seventeen physical therapy sessions. (Id. ¶ 34.) After a November 5, 2009 therapy appointment, Dr. Meyers, the doctor conducting Daniels's physical therapy, noted that "Daniels reported that his shoulder was better." (Id. ¶ 19.)

> In addition to the therapeutic exercises set forth in the physical therapy log, Dr. Meyers and inmate Daniels focused on manual therapy to increase mobility of the glenohumeral as well as passive range of motion. Dr. Meyers noted that inmate Daniels was working hard and showing gains with his range of motion and strength. Dr. Meyers also noted that inmate Daniels was improving and that his tolerance to therapy was good. Dr. Meyers' plan was to continue with the current physical therapy plan and he instructed inmate Daniels to work on his external rotation.

(Id.)

On January 12, 2010, Daniels met with Dr. Meyers for another physical therapy appointment. (Id. ¶ 30.)

> During the appointment, inmate Daniels reported anxiety associated with coming to his physical therapy appointments because of the presence of a guard and the restraints that were required for inmates. Inmate Daniels requested that his formal physical therapy program be discontinued and that he be permitted to do home exercises on his own. Pursuant to inmate Daniels' request, Dr. Meyers made arrangements to discharge him from the formal physical therapy program, updated inmate Daniels' home exercise program and provided inmate Daniels with a copy of handouts of exercises he could perform on his own to continue his physical therapy at home (in jail) and continue to increase his range of motion and strength. He did not have any complaints regarding the surgery or the appearance of his shoulder (or any other part of his body).

(Id. ¶ 30.)

Defendant Caldwell "instructed . . . Daniels to return in two months at the conclusion of [a] January 4, 2010 visit, inmate Daniels failed to do so." (Id. ¶ 32.) On May 25, 2010, Daniels was transferred to the custody of the Virginia Department of Corrections. (Lahiff Aff. ¶ 4.)

"Daniels'[s] shoulder strength and mobility continued to improve up to the point that he took it upon himself to request that the formal physical therapy program recommended for him be discontinued." (Caldwell Aff. ¶ 34.) "At no time during his physical therapy or his appointment[s] with [Dr. Caldwell], did inmate Daniels voice the concern that his anterior deltoid

7

muscle may have been removed." (Id.) If Daniels had raised "such a concern, [Dr. Caldwell] would have explained to him that that muscle had not been removed and [Dr. Caldwell] would have answered any questions that he had . . . ." (Id.)

## V. ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Daniels must demonstrate that Dr. Caldwell acted with deliberate indifference to his serious medical needs. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."

8

Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837).

Daniels's claim of deliberate indifference is predicated upon the allegation that Dr. Caldwell unnecessarily removed Daniels's deltoid muscle and failed to provide Daniels with physical therapy following Daniels's surgery. (Compl. 4.) Such a claim is factually frivolous. The evidence reflects that Dr. Caldwell did not remove Daniels's deltoid muscle and provided Daniels with physical therapy following his surgery. Indeed, Daniels bears sole responsibility for the termination of his physical therapy. Because the evidence reflects that Dr. Caldwell provided reasonable medical care, rather than acting

9

with deliberate indifference, the Motion for Summary Judgment will be granted. Daniels's claim will be dismissed.

### V. PRISON LITIGATION AND REFORM ACT ("PLRA")

Under the PLRA, this Court must dismiss a "case at any time if the [C]ourt determines that" the action "is frivolous." 28 U.S.C. § 1915(e)(2)(B)(i). The standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). This provision applies to cases dismissed at the summary judgment stage. See Blakely v. Wards, 701 F.3d 995, 1001 (4th Cir. 2012). The record reflects that the factual contentions of Daniels's present action "'are clearly baseless.'" Id. (quoting Neitzke, 490 U.S. at 327); see Blakely, 701 F.3d at 1000 n.2 ("Making an [Americans with Disabilities Act] claim without being disabled surely supports a frivolity determination and certainly supported the district court's decision that that dismissal counted as a strike."). Thus, the action is factually frivolous.

## VI. CONCLUSION

The Motion for Summary Judgment (ECF No. 48) will be granted. The action will be dismissed as factually frivolous. Daniels's "MOTION FOR TRIAL SETTING" (ECF No. 60) will be denied. The Clerk will be directed to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

The Clerk is directed to send a copy of the Memorandum Opinion to Daniels and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: December 17, 2013
Richmond, Virginia